Mark L. BROOKS, a/k/a Jessica M. Lewis, # 90–A–6426, Plaintiff,

v.

Stan BERG, Assistant Deputy Superintendent; Daniel A. Senkowski, Superintendent, Superintendent Clinton Correctional Facility; Thomas G. Eagen, Director of Inmate Grievance; Florence Kaufman, Psychiatrist; Helen Worley, Supervisor of Inmate Grievance; John Doe, Staff, Mental Health Satellite; John Doe, Staff, Mental Health Satellite Unit; John Doe, Staff, Mental Health Satellite Unit, Defendants.

No. 00–CV–1433.

United States District Court, N.D. New York.

Oct. 29, 2003.

Mark L. Brooks, Dannemora, NY, Pro se.

Sean M. Seely, Deborah A. Ferro, Office of Attorney General Department of Law, Albany, NY, for defendants.

### MEMORANDUM–DECISION AND ORDER

KAHN, District Judge.

## I. Background

The facts of this case were set forth in detail in a July 15, 2003 decision by this Court to grant Defendants' motion for summary judgment in some respects and deny the motion in others. *Brooks v. Berg*, 270 F.Supp.2d 302 (N.D.N.Y.2003). Following that decision, Defendants have filed a motion pursuant to Rule 54(B) to vacate the denial of summary judgment with respect to defendants Berg and Senkowski and to permit those defendants to file a motion for summary judgment after the expiration of the dispositive motion deadline.

## II. Discussion

### (a) Plaintiff's Entitlement to Appropriate Medical Treatment

As an initial matter, the Court notes that Defendants now admit that Plaintiff is entitled to the very medical treatment that was held to be required by this Court in its prior opinion. That opinion stated, consistent with other courts that have made determinations on the issue, that Gender Identity Disorder (GID) is a serious medical need and that inmates with GID must receive *some* form of treatment. *Id.*, at 309–10. In their memorandum, Defendants now candidly acknowledge that Plaintiff is entitled to this treatment. They now state that "the [Department of Correctional Services] policy *does not prevent an inmate who first manifests a Gender Dysphoria condition or Gender Identity Disorder while incarcerated from being evaluated or provided with potential treat-

*ment modalities.*" (Defendants' Memorandum at 11) (emphasis added). Defendants have also submitted the affidavit of Lester Wright, Deputy Commissioner/Chief Medical Officer for the New York State Department of Correctional Services, which states that " [i]n the normal course of events, if an inmate for the first time while incarcerated claims to have [Gender Identity Disorder], a referral should be made to the appropriate clinician with [the Office of Mental Health] for evaluation." *See* Affidavit of Lester Wright, M.D., dated July 24, 2003 ¶ 8. He goes on to state that "Gender Identity Disorder is described in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders," and that therefore "a referral to an OMH clinician is the appropriate course of action." *Id.* Defendants thus for the first time before this Court admit that Plaintiff is entitled to medical treatment for his GID.

### (b) Personal Involvement of Defendants Berg and Senkowski

Driving Defendants' motion to vacate is the issue of personal involvement of defendants Berg and Senkowski in the alleged denial of appropriate medical treatment to Plaintiff. Defendants argue that they failed to adequately address this issue before this Court in their briefing and concede that "defendants could have been more thorough and detailed in their presentation of the facts." (Defendants' Memorandum at 5). The Court first notes that in deciding a motion for summary judgment, courts must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir.2001) (quoting *Cifra v. General Electric Co.*, 252 F.3d 205, 216 (2d Cir.2001)). Thus, it should have come as no surprise to Defen-

dants that they would bear the burden of demonstrating that there existed no genuine issue of material fact. Defendants should also have known that this Court was required to draw all rational inferences in Plaintiff's favor. In its prior opinion, the Court acted in accordance with the well-established standard stated above, considering material issues of fact to exist where the moving party, in this case Defendants, did not submit evidence or argument proving otherwise. Since they failed previously to adequately address the issues before the Court, Defendants now ask for a second opportunity to do so.

■ A party moving to vacate or modify an interlocutory order "must do so within the strictures of the law of the case doctrine." *Virgin Atlantic Airways, Ltd. v. National Mediation Board*, 956 F.2d 1245, 1255 (2d Cir.1992). This doctrine is discretionary, however, and does not limit a court's power to reconsider its own decisions prior to final judgment. *Id.* The major grounds for justifying such reconsideration are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id.* (citing 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478 at 790). It is on the last of these grounds that defendants ask the Court to grant their motion.

■ The Court finds no error in its prior decision. As stated above, in a summary judgment motion, the burden is on the moving party to establish that there exists no genuine issue of material fact for trial. Defendants simply did not meet that burden, and the Court generally cannot, having rendered a decision adverse to one party, give that party a second chance to correct the mistakes it made in its prior pleadings. Littered throughout Defendants' memorandum are admissions that

their briefing was not sufficiently thorough and that, had it been, the Court would have found no genuine issues of material fact. Such grounds do not ordinarily suffice in a motion to vacate a prior decision.

With respect to defendant Senkowski, the Court stated that "Defendants [had] not explained how inmate appeals are delegated and they [had] not submitted any evidence establishing that Senkowski did not review and approve of the denial of Plaintiff's appeal." *Brooks*, at 309. Defendants' memorandum in support of the present motion notes that "[a]dmittedly, while defense counsel could have specifically [pointed out that the signature on the decision denying the appeal of his grievance to the superintendent was that of the First Deputy Superintendent, Roy Girdich], counsel apparently understood plaintiff's claims against defendant Senkowski to be due process violations, not personal involvement in the decision to deny plaintiff [treatment]." (Defendants' Memorandum at 9). In other words, just as the Court stated in its opinion, Defendants failed to specify in their pleadings what role defendant Senkowski played in the denial. The Court, therefore, properly treated the issue of Senkwoski's personal involvement as a genuine issue of material fact about which Defendants had not proven a lack of dispute. Defendants now acknowledge that lack of proof.

Similarly, with respect to defendant Berg, the Court stated in its prior opinion that "it appears that while Berg may have been responsible for ensuring that Plaintiff received appropriate treatment, he failed to respond to Plaintiff's requests for treatment in March and April 1999," and that "Plaintiff may also be able to establish Berg's supervisory liability." *Brooks*, at 308. In their memorandum, Defendants note that "it would have assisted the Court had counsel clarified the capacity in which

 

defendant Berg was acting at the times complained of." (Defendants' Memorandum at 10). Again, Defendants failed to submit evidence upon an issue of material fact, and the Court therefore treated that fact as disputed.

Defendants in this case do not assert that affidavits or other forms of evidence supporting their motion for summary judgment were not available prior to its filing. Nor do they assert that the Court overlooked any relevant factors deserving of significant weight. In determining whether there existed a genuine issue of material fact, the Court could only look at the evidence and arguments submitted by the parties. Where, as here, one party fails to submit thorough pleadings, the Court would not, except in unusual circumstances, afford that party an opportunity to correct such failings after the Court has rendered its decision. However, since Defendants now concede that Plaintiff is entitled to some form of medical treatment, and because the interest of judicial economy weighs strongly in favor of the Court vacating its earlier decision and allowing Defendants to file a new motion for summary judgment, the Court grants Defendants' motion.

## III. Conclusion

Based on the foregoing discussion, it is hereby

ORDERED, that Defendants' motion to vacate this Court's July 15, 1003 denial of summary judgment to defendants Berg and Senkowski and to permit those defendants to file a motion for summary judgment after the expiration of the dispositive motion deadline is **GRANTED**; and it is further

ORDERED, that Defendants shall have **Thirty (30)** days to file their new motion for summary judgment; and it is further

ORDERED, that the Clerk serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.